McCORMICK HARVESTING MACHINE COMPANY v. JOHN OKERSTROM, Appellant.

**Order Conditioned on Satisfaction With Goods Ordered:** CONSTRUC-
TION. Where defendant signed a written order to plaintiff for a harvester, and delivered it to plaintiff's agent under an oral agreement that the order should not be delivered to plaintiff until defendant examined the machine, and, if he was not then satisfied with it, he could countermand the order, a charge that such agreement means that the machine could not be objected to by defendant unless it was, for a satisfactory reason, based on some matter relating to the machine, and not simply the fact that he did not like it, is erroneous, since if defendant was honestly dissatisfied with the machine on inspection, he was not required to take it.

Evidence.  Where defendant signed a written order for a harvester,
conditional on his being satisfied with the machine on inspec-
tion, evidence that he was not satisfied with the machine ten-
3  dered because he wanted a left-hand cut, and the one offered
was a right-hand cut, was competent in an action for the
price.

Jury question.  Where defendant signed a written order for a
harvester, the order to be delivered only on condition that,
after inspection, defendant was satisfied with the machine, and
4  he refused the machine tendered because it was a right-hand
cut, it was error to charge that the mere fact that the machine
was a right-hand cut machine was not sufficient excuse for the
defendant to refuse to accept it, since the question was one for
the jury.

*Appeal from Sac District Court.*—Hon. Z. A. Church,
Judge.

Saturday, May 25, 1901.

Plaintiff states as his cause of action, in substance,
as follows: That on April 15, 1898, the defendant delivered
to plaintiff his written order for a harvesting machine; that,
upon receipt of said order, plaintiff accepted the same, no-
tified the defendant thereof, and in due time shipped the
machine as in said order provided; that defendant fails and
refuses to receive said machine, or to pay or settle therefor
in accordance with said order, wherefore there is due to
plaintiff from the defendant, as purchase price for said ma-
chine, the sum of $125, which plaintiff asks to recover. In
an amendment plaintiff alleges that about July 16, 1898, it
tendered to the defendant a machine as called for by said or-
der, and that it has been ever since and is now ready, able,
and willing to deliver said machine, and has the same at
the disposal of the defendant at Wall Lake. The defendant
answered in substance as follows: He admits the execution
of the written order set out in plaintiff's petition, and al-
leges that it was under the following circumstances: That
at the time said order was executed it was agreed that the
same should be held by plaintiff's agent, and not delivered to

the plaintiff until defendant had opportunity to examine said machine, and that if, upon examination, defendant was not satisfied with the machine, he might countermand said order; that, upon inspection of one of plaintiff's machines of like kind, he was not satisfied with it, and so notified plaintiff; and also notified plaintiff that he countermanded said order, defendant charges fraud and deceit in procuring him to execute said order, but this defesne does not seem to have been insisted upon. Verdict and judgment were rendered for the plaintiff. Defendant appeals.—*Reversed.*

*H. C. Preston, Hastings & Brasted,* and *A. B. Barclay* for appellant.

*W. A. Helsell* and *Tait & Jackson* for appellee.

Given, C. J.—I. The written order signed by the defendant is as follows: "McCormick Harvesting Machine Company's Order Blank. Machine delivered on cars in Chicago. McCormick Harvesting Machine Company will ship for the undersigned on or about July, 1898, one of their 1898 six ft. cut harvester and binder, including the usual extras, consigned to the care of Hopkins, at Wall Lake. The undersigned agreeing on delivery of the machine to then pay the McCormick Harvesting Machine Company cash, or execute approved notes for the sum of $25.00, payable on the first of January, 1899, $30.00 payable on the first day of January, 1900, $35.00, payable on the first day of January 1901, $35.00 payable on the first day of January, 1902, with interest thereon at six per cent. per annum from 1-1-99 until due, and interest at the rate of —— per cent. per annum from maturity until paid." Following this is a warranty of the machine, an agreement to put it in order if it should not work well, and that, if it could not be made to work well, plaintiff might return it. This order was given April 15, 1898, to Mr. Hopkins, agent at Wall Lake, Iowa, and was forwarded by him to the gen-

eral agent, who, on April 16, 1898, wrote the defendant, acknowledging receipt of the order, and saying, "This machine will be shipped promptly according to the terms and conditions of the order." This notice was duly received by the defendant. Soon afted giving the order, the defendant examined one of plaintiff's machines of the kind ordered, and again, prior to May 17th, made a second examination, but did not say whether or not he was satisfied, until May 17th, when he notified Mr. Hopkins by postal card that he would not take the machine, in reply to which Mr. Hopkins insisted that he was bound by the order. On May 26th the defendant wrote plaintiff's general agent as follows: "I herewith countermand order I gave Mr. Hopkins for a binder. I don't want it. I gave the order, if I don't like the machine I don't have to take it. Had sold some binders for $125, and others for a good deal less. Of course, he didn't sell the binder any cheaper, but give in all the way from 50 —150 pounds of twine and other stock." To this the general agent replied, declining to cancel the order. On July 8, 1898, Mr. Hopkins received a car load of machines at Wall Lake to fill the orders taken by him, including one for the defendant, and on July 14th he notified the defendant that his machine was ready for delivery; but the defendant then, and ever since has, refused to take the same. The reasons given by the defendant in his evidence for not taking the machine were that it was a "right-hand cut"; that he had dragged his stalks with a view to using a left-hand cut; and that his neighbors had left-hand cut machines, and that he could not exchange work with them with a right-hand cut machine. This evidence the court withdrew from the consideration of the jury.

II.   This case seems to have been tried upon the theory that, notwithstanding the written order, the defendant might prove the verbal agreements set up in his answer. Appellee's counsel insist that the case was not tried upon that theory, but they failed to point out upon what other theory it was

tried. Such, certainly, are the issues that were joined by
the answer without objection thereto, and it was to these is-
sues that the evidence without objection and the instructions
were largely addressed. The court instructed to the effect:
"That, if the jury found that the order was an absolute one,
without any reservations, as claimed by the defendant; that
the machine was delivered at Wall Lake for the defendant,
and defendant notified thereof and that the machine had
since been held for him—they should find for the plaintiff.
That if defendant had an agreement with plaintiff by which
he had a right to reject the machine if, upon examination
of one of the kind, it was not satisfactory, and that, examin-
ing one, he found it unsatisfactory, and that he counter-
manded the order, the verdict should be for the defendant.
That defendant's claim that he should be the sole judge as
to whether the machine was satisfactory to him "means that
the machine could not be objected to by defendant unless it
was for a satisfactory reason." That a satisfactory
reason for its rejection "must be based upon some
matter relating to said machine, and not simply a
fact—if it be a fact—that he did not like it, or that he did
not want to accept said machine." That if it was agreed, as
claimed by the defendant, "this would not give him the right
to arbitrarily refuse to take the machine, before he could
thus refuse, he must have some reasonable ground for refus-
ing. The mere fact that the machine in controversy was a
right-hand cut machine is not sufficient excuse for the de-
fendant to refuse to accept the machine. or demand the sur-
render of his order." Parties may contract that if, upon
inspection, or upon trial, the purchaser is not satisfied with
the article purchased, he may refuse to take it, or, if taken
on trial, may refuse to keep it. The authorities are in ac-
cord in holding that, where a chattel is purchased under an
agreement as alleged in this case the buyer is not liable for
the price unless he is satisfied, and accepts the article. In
such case he is the sole judge as to whether the article is

satisfactory or not, and, if he is not satisfied, he is not bound to accept the article, although, as a matter of fact, he ought to have been satisfied therewith. It is further said that the buyer is bound to act honestly, "and to exercise such judgment and capacity as he possesses, his dissatisfaction must be real, not feigned. But, as it is the buyer who is to be satisfied, and not some one else, it has been held that he is not bound to use the care and skill of ordinary persons in making the decision, but only such capacity and judgment as he himself possesses. 6 Am. & Eng. Enc. Law (2nd ed.) 464, 465. To act honestly, the buyer's refusal must be based upon some objection to the article purchased. It would not be an honest objection because he was induced, or preferred, to buy of a different manufacturer.

The defendant, for the purpose of showing that he acted honestly, introduced evidence as to the advantage of his having a left-hand cut machine; but this, we have seen, the court withdrew from the jury, and in this we think the court erred, and also in stating to the jury that "the mere fact that the machine in controversy was a right-hand cut machine is not sufficient excuse for the defendant to refuse to accept the machine, or demand the surrender of his order," as this was a question for the jury. What we have said disposes of the other questions urged in argument, and leads to the conclusion that, for the reasons mentioned, the judgment of the district court must be REVERSED.