THE HANEY-CAMPBELL COMPANY, Appellant, v. THE PRESTON CREAMERY ASSOCIATION AND OTHERS, Appellees.

Action to Recover for Sale of Machinery: CONSTRUCTION OF CONTRACT. SATISFACTION OF PURCHASER: INSTRUCTIONS. In a suit

1  to recover on a contract for the sale of machinery which provides, that should the same fail to do good work and prove unsatisfactory to the buyer, the seller will substitute any other machine of like capacity wh'ch the buyer may designate, or permit the buyer to withhold from the contract price a certain sum for the purchase of same, an instruction that the machine must not only be capable of doing good work but must work

to the satisfaction of the purchaser, and that an objection thereto must be honestly and fairly made after a fair and reasonable test, correctly states the law of the case.

Same: NOTICE OF DISSATISFACTION: DISCOVERY AND REMEDY OF DEFECTS. Where the contract provides that if the machinery prove defective the seller shall be permitted to remedy the defects within a reasonable time, it is the duty of the buyer to give notice of his dissatisfaction and of the seller to discover and remedy the defects.

Same: EVIDENCE OF NOTICE OF DEFECT: Evidence considered and held sufficient to establish notice to plaintiff that the machinery did not do satisfactory work.

Same: REASONABLE TIME, TEST AND SKILL ARE JURY QUESTIONS. The questions of reasonable time in which to remedy defects, a reasonable test and due exercise of proper skill in the operation of the machinery are jury questions.

Evidence: ADMISSIONS: WHEN EXCLUDED. · Where the buyer has the right to accept or reject a machine under the contract of purchase, it is not error to exclude the individual statements, offered as admissions, of officers of the corporation who are not charged with its operation.

Same: Error in rejecting testimony is cured by its subsequent admission.

Same: The testimony of an expert regarding the effect of its broken condition upon the operation of the machine was properly excluded, there being no showing of the manner in which the alleged break affected the working of the machine or that the same produced the fault complained of.

Special Findings: HOW LIMITED. Special findings submitted to the jury must be limited to an inquiry regarding ultimate facts.

*Appeal from Jackson District Court.*—HON. A. J. HOUSE, Judge.

MONDAY, JANUARY 26, 1903.

ACTION at law to recover upon a contract for the erection and equipment of a creamery. Verdict and judgment for defendants, and plaintiff appeals.—*Affirmed.*

*G. L. Johnson* and *C. C. & C. L. Nourse* for appellant.

*D. A. Wynkoop* for appellees.

WEAVER, J.—This action is based upon a written contract, by which plaintiff undertook to erect and equip a creamery for the defendant association at Preston, Iowa, for the sum of $3,150. That portion of the contract which is more particularly involved reads as follows: "The party of the second part agrees to make a payment for building material and machinery covered by this agreement as follows: Twelve hundred dollars ($1,200) when the building is completed according to contract; nine hundred and fifty dollars ($950) in thirty (30) days from date of completion and starting of machinery; provided machinery is according to contract, and the Squeezer Combine churn is satisfactory. An extra thirty (30) days shall be allowed for testing separators; and in sixty (60) days from the completion and starting of the machinery in said factory the balance, one thousand ($1,000) dollars, shall be due and payable: providing that during that time said separators do good and satisfactory work. Should the said separators fail to do good work, and prove unsatisfactory to the second party, the first party agrees to substitute any style of belt-machine separator designated by said second party of not greater capacity than of 2,500 pounds per hour, or to permit the second party to withhold a sum not to exceed one thousand dollars ($1,000), that they may purchase other separators. Should the separators mentioned in specifications prove defective, the first party is permitted to remedy any such defects within a reasonable time without prejudice." The plaintiff alleges that it has fully performed its agreement, and there is due and unpaid upon the contract price the sum of $1,000, for which it asks judgment. The defendant denies that plaintiff has performed its contract, and alleges that there is

nothing due or unpaid on the contract price. Defendant further answers that the plaintiff agreed to furnish separators with a capacity of 2,500 pounds per hour, but failed so to do; that within the period allowed for testing the separators they were found to be insufficient, defective, and unsatisfactory, and incapable of doing satisfactory work; that notice of such failure of the separators was given to the plaintiff; that, after waiting a reasonable time for plaintiff to remedy the defects, or to furnish other machinery in lieu thereof, and plaintiff failing so to do, defendant was compelled to and did furnish other and proper machinery at the reasonable and necessary expense of $1,000, and elected to withhold the sum of $1,000 from the contract price of the creamery, as by the express terms of the agreement it had the right to do; for which reason it is claimed there is nothing whatever due the plaintiff.

I.   Plaintiff complains in argument that the trial court misdirected the jury as to the construction of the

1. CONSTRUCTION of contract; satisfaction of purchaser; instructions.

contract and the duties and obligations of the parties thereunder. The paragraphs of the court's charge to which most serious exception is taken are as follows:

"(10) Said separators must not only have been capable, under proper management, of doing good work,—that is, such work as would be satisfactory to intelligent and reasonable men using that character of machinery,—but said contract required that, when tested, they should work satisfactory to the defendant company. The defendants allege that said separators were not satisfactory to them, and, as before stated, the burden rests on the defendants to establish such alleged fact by a preponderance or greater weight of the evidence.

"(11) The defendants, in determining whether or not they were satisfied with such separators, must have acted honestly, and in good faith, and after making a fair and reasonable test of such separators. They had no right to

base their action on any whimsical, fictitious notion or mercenary motive. Whether or not the defendants were honestly and in good faith dissatisfied with said separators and their work, is a question of fact for you to determine. In coming to a conclusion on such question, involving as it does the intention and motives of said company, you may and should take into consideration the acts and conduct of said company done through its officers, together with all other facts and circumstances shown in the evidence which may aid you in coming to a just conclusion."

Criticising the rule thus stated, the appellant says: "The object of the contract was to secure machinery that would do 'good work,' and the right to reject it in case it failed to do good work; only this, and nothing more. Whether or not the separators did good work was susceptible of proof, and the judgment of third persons was quite as competent and reliable as that of defendants. If defendants rejected the machines that were capable of doing good work, they acted unreasonably, and in violation of the clear intent of the contract. They necessarily acted either in bad faith, or through ignorance, or prejudice, or the undue influence and manipulation of third persons, who had pecuniary ends to gain in having these separators rejected. At most, they must give satisfactory reasons for their conduct, and must act reasonably; and their conduct in this respect is subject to judicial inquiry."

We cannot agree with the proposition thus stated. While the holdings upon this general question do not seem to be uniform, we think the rule has never been established that under a contract of the kind here being considered the buyer must not only act reasonably in rejecting the article furnished by the seller, but must also be able to give "satisfactory" reasons for such rejection. Under plaintiff's theory the rights of the parties are to be determined precisely as if the words, "and fail to prove satisfactory to the second party" were eliminated from

the contract. This we have no right to do. No word or words in a contract are to be treated as redundant if any meaning reasonable and consistent with other parts can be given thereto. *Heywood v. Heywood,* 42 Me. 229 (66 Am. Dec. 277); *Randel v. Canal Co.,* 1 Har. (Del.) 151; *Hollingsworth v. Fry,* 4 Dall. 345 (Fed. Cas. No. 6,619, 1 L. Ed. 860); *Baron v. Placide,* 7 La. Ann. 229. There is nothing which inheres in the words referred to, nor in the contract as a whole, which justifies an inference that the parties did not mean exactly what they said. In the absence of anything in the contract as an entirety, or in the nature of the subject matter, which requires a different interpretation, courts are required to give effect to the agreement according to the ordinary popular meaning of the terms employed and in the established usage of the language. *Cash v. Hinkle,* 36 Iowa, 623; *Stettauer v. Hamlin,* 97 Ill. 312. That a stipulation that the buyer shall be satisfied with his purchase before the sale is complete, or before he can be held liable for the price, is valid, has been many times decided. *Silsby Mfg. Co. v. Town of Chico,* (C. C.) 24 Fed. Rep. 893; *Gray v. Railroad Co.,* 11 Hun, 70; *McCarren v. McNutty,* 7 Gray, 139; *Brown v. Fostor,* 113 Mass. 136 (18 Am. Rep. 463); *Gibson v. Vail,* 53 Vt. 476; *Pierce v. Cooley,* 56 Mich. 552 (23 N. W. Rep. 310); *Exhaust Ventilator Co. v. Chicago, M. & St. P. R. Co.* 66 Wis. 227 (28 N. W. Rep. 343, 57 Am. Rep. 257); *United States Electric Fire Alarm Co. v. City of Big Rapids,* 78 Mich. 67 (43 N. W. Rep. 1030); *Platt v. Broderick,* 70 Mich. 577 (38 N. W. Rep. 579); *Warder, Bushnell & Glessner Co. v. Whitish,* 77 Wis. 430 (46 N. W. Rep. 540); *Howard v. Smedley,* 140 Pa. 81 (21 Atl. Rep. 253); 2 Addison, Contracts, 942; 2 Benjamin, Sales, 878, 897; 1 Mechem, Sales, sections 663-671; Beach, Modern Contract Law, section 105. See, also, *Printing Press Co. v. Throp,* (C. C.) 1 L. R. A. 645, and cases cited in note (s. c. 36 Fed. Rep. 414).

In the purchase of works of art and articles appealing for their value largely to individual taste or sentiment, rather than to mere utility, the rule seems to be that the buyer upon such condition may refuse to accept for no better reason than that he is not satisfied, and the good faith of such refusal and the reason for his dissatisfaction are not subjects of judicial inquiry. *Gibson v. Cranage*, 39 Mich. 49 (33 Am. Rep. 351); 1 Mechem, sales, section 666; *Zaleski v. Clark*, 44 Conn. 218 (26 Am. Rep. 446). Where, however, as in the case before us, the article is one which is ordinarily desirable only on account of its commercial value, or its mechanical fitness or adaptability as a labor-saving device, the buyer has usually been held to a somewhat stricter liability, though not to a full measure of the obligation of a purchaser under an ordinary express or implied warranty. It is the duty of such a purchaser to give the thing purchased a reasonable trial. *Manufacturing Co. v. Brush*, 43 Vt. 528; *Daggett v. Johnson*, 49 Vt. 345; *McClure v. Briggs*, 58 Vt. 82 (2 Atl. Rep. 583, 56 Am. Rep. 557). Having so done, if it does not work to his satisfaction, he may refuse to keep and pay for it, providing only that he acts in good faith, and is honestly dissatisfied; and in such case the fact that others would regard the article purchased as good and satisfactory, or that it worked well in other hands, would be immaterial, See cases of *Exhaust Ventilator Co. v. Chicago, M. & St. P. R. Co.*, *Gray v. R. R. Co.*, *Daggett v. Johnson*, *Manufacturing Co. v. Brush* above cited. The doctrine here stated has had the express approval of this court. *Machine Co. v. Okerstrom* 114 Iowa, 260. In that case the defendant ordered a harvester from the plaintiff, reserving the right to countermand the order if, upon examination, he was not satisfied with the machine. Upon the arrival of the machine plaintiff expressed his dissatisfaction with it, and refused to accept it. On the trial he assigned as a reason for his refusal of the machine that it was a right hand cut,

instead of a lefthand cut, although his order made no designation in this respect. The district court instructed the jury that defendant could not rightfully reject the harvester except "for a satisfactory reason," and that "the mere fact that the machine was a righthand cut is not a sufficient excuse for the defendant to refuse to accept the machine."

In holding that such instruction was erroneous, we said: "Parties may contract that if, upon inspection, or upon trial, the purchaser is not satisfied with the article purchased, he may refuse to take it, or, if taken on trial, may refuse to keep it. The authorities are in accord in holding that, where a chattel is purchased under an agreement as alleged in this case, the buyer is not liable for the price unless he is satisfied, and accepts the article. In such case he is the sole judge whether the article is satisfactory or not; and, if he is not satisfied, he is not bound to accept the article, although, as a matter of fact, he ought to have been satisfied therewith. It is further said that the buyer is bound to act honestly, and to exercise such judgment and capacity as he possesses. His dissatisfaction must be real, not feigned. But as it is the buyer who is to be satisfied, and not some one else, it has been held that he is not bound to use the care and skill of ordinary persons in making the decision, but only such capacity and judgment as he himself possesses."

The contract in the case at bar comes fairly within the principles thus announced. While the consideration for the entire work and equipment is fixed at an aggregate sum of $3,150, the parties have also, in effect, set apart $1,000 of the sum as representing the price or value of the separators, and have provided that if, upon a test of actual use, limited to sixty days, the machines did not do good and satisfactory work,—that is, satisfactory to the defendant,—plaintiff should replace them with others of the designated capacity, to be selected by the defendant, or,

in lieu thereof, should permit plaintiff to retain the cost of such replacement, not exceeding $1,000. As will be noted, the requirement of the contract was, not simply that the machines should be found to do good, average work which butter makers in general would regard good and satisfactory, but to do good work satisfactorily to the defendant. In applying this test the defendant was bound, as we have seen, t) act in good faith; and if, after a fair trial, and within a period of sixty days, the creamery company was honestly and fairly dissatisfied with the working of the separators, and so advised the plaintiff, it had the legal right to demand the substitution of other machines of similar capacity, and upon plaintiff's failure to comply with such demand it was justified in making the substitution for itself, and retaining the reasonable cost thereof, not in excess of $1,000, from the consideration named in the written contract. This is, in substance, the law as given in the instructions complained of, and the assignments of error thereon are not well founded.

II. Exception is taken also to the eighth and ninth paragraphs of the instructions, reading as follows:

"(8) By the provisions of said contract, if said separators proved defective, the plaintiff was entitled to reasonable time after the completion and starting of machinery 2. SAME: notice in said creamery in which to ascertain and of dissatisfaction; discovery and remedy of defects. remedy such defects. The duty of ascertaining such defects, if any, rested on the plaintiff. The defendant company was not bound to point out such defects if any existed. What would be a reasonable time in this respect, and whether or not such time elapsed before the defendant company finally rejected such separators, are questions of fact for you to determine from the evidence before you; and in determining such questions you should take into consideration the nature and character of such separators, the business in which used, together with all the surrounding facts and circumstances.

shown by the evidence, which, to your minds as reasonable men, throw light on such questions.

"(9) Before rejecting said separators, it was the duty of the defendant company, in good faith, to subject them to a fair and reasonable test as to their ability and capacity to do good and satisfactory work, and in so doing it was its duty to exercise in the management of such machinery, including such separators, such care and prudence as a person of ordinary care and prudence, capable of managing like machinery, would use under like circumstances. It was not bound to bring to its aid experts especially versed in running such particular kind of separators. Neither was it bound to continue such test for the full period of the sixty days allowed it by said contract, unless such time was necessary in order to make a fair and reasonable test of such separators."

Many of the objections made to the rules thus laid down by the trial court are necessarily governed by the conclusion reached in the first division of this opinion, and we need not repeat the views there expressed. But it is further urged that the court erred in holding that the duty of ascertaining the defects, if any, in the separators was upon the plaintiff. We think the instruction correct. The thing provided for by this part of the contract, and upon which the defendant had the right to insist, was that the separators should do good and satisfactory work, and if, upon trial, they failed to do such work, it was defendant's duty to give notice of that fact; but it was under no obligation to discover and point out to plaintiff the cause of such failure. It would be unreasonable to expect it so to do, in the absence of any express agreement to that effect. The ordinary purchaser of labor saving appliances is not an expert machinist. He does not buy a machine because he understands and appreciates the office or operation of each particular piece or part of the mechanism. The test which satisfies him is a practical application of the machine as a

completed instrument to the work in hand,—the results. If these are deficient, he knows it, although he may have no knowledge whatever of the cause; and, if he has purchased under a condition or agreement by which good work is guaranteed, it is for the seller, on receiving notice of the failure, to ascertain and remedy that defect, if any.

The use of the words "defect" and "defective" in the instructions is also criticised, the contention being that they have no application to any want of efficiency or adaptability in the invention or device embodied in the separators, but simply to some impairment, or weakness, or improper adjustment, which can be obviated by repair. The criticism cannot be sustained. A defect is a fault, the want or absence of something necessary for completion or perfection; and we see no reason why a fault in the device itself, a mistake by the inventor in the application of the principles of mechanics to the machine, is not, in the strictest sense of the word, a defect. Neither was there any error in charging the jury that the defendant was not bound to continue the test of the separators for the full term of sixty days. The time thus named was the limit beyond which, if defendant held the machines, it was bound to keep and pay for them. If it made an honest, fair, and reasonable effort to obtain good and satisfactory results from the use of the machines, and failed so to do, it was not bound to wait till the sixty days had expired, but upon giving plaintiff proper notice of the failure, and allowing reasonable time to remedy the defect, it could rightfully demand other machines, and in default of their delivery proceed to purchase them, and receive the agreed abatement upon the contract with plaintiff. No other reasonable interpretation can be placed upon the language of the agreement.

III. It is said that, even in this view of the law, there is absolutely no evidence that plaintiff was ever notified of any defects in the separators, and therefore

defendant cannot be relieved of its liability to pay for them. If by this is meant 'that defendant did not designate and specify to the plaintiff reasons why the separators did not do good work, we have already shown that no such duty rested upon the defendant.  There is, however, an abundance of testimony and practical admission that the plaintiff was repeatedly notfied that the separators did not do good work, and of the nature of the fault complained of.  These complaints began almost immediately after the defendant undertook the operation of the machines,— about September 1st,—and continued from time to time until the middle of October.  On October 9th, plaintiff, by letter, acknowledged receipt of notice that the machines were not giving satisfaction, and promised to send an expert down "to-morrow or Wednesday," and expressed the assurance that he would "be able to straighten out whatever is wrong with little delay, and to the entire satisfaction of your company."  But, instead of going to the relief of defendant on the 8th or 9th of October, as promised, the expert did not reach there until Sunday, the 15th, and presented himself at the creamery on the 16th of that month.  Meanwhile the defendant company had, by formal action on the 14th, refused to accept the separators, and directed that plaintiff be notified to furnish others of a pattern known as the "Alpha."  At the request of the expert he was allowed to attempt to fix the machines, and to continue the effort to make them work satisfactorily. These efforts were continued until October 24th, when plaintiff's request for time for further trial and for a reconsideration of the action taken on the 14th was finally refused by the defendant.

It was for the jury to say whether the defendant did give the machines a reasonable test, and whether, after notifying the plaintiff, and receiving its promise to send an expert, reasonable time was allowed him to come and

<div style="margin-left:2em"><strong>3.  SAME; evidence of notice of defects.</strong></div>

remove the difficulty, before proceeding to reject them and

**4. SAME; reasonable time, test and skill are jury question.** demand others in their stead. Upon that question the general verdict and special findings are all adverse to the appellant. So, also, it may be said as to appellant's contention that defendant did not operate the separators with proper care and skill. The rule, as hereinbefore indicated, seems to be that under the terms of a contract like the one before us the buyer is bound to exercise only such judgment and capacity as he possesses, and, if the test is honestly made, and proves unsatisfactory, he may reject the machine, although in the hands of a person of ordinary skill and experience it would do good work. *Machine Co. v. Okerstrom, supra.* The instruction given by the district court held the defendant to a more exacting measure of liability than this rule would indicate, but even under this more stringent holding the jury have specially found that the separators were given a fair and reasonable test, and we cannot say the finding is without sufficient support in the record.

IV.   Certain exceptions are taken to rulings upon the admission of evidence of which it is necessary to notice only the following.   It seems that plaintiff's wit-

**5. EVIDENCE; admissions; when excluded.** ness McAvoy installed the machinery, and remained for a few days at the outset to assist in putting it in operation.   He described upon the witness stand the manner in which the separators then worked, and was asked what certain of defendant's officers and stockholders who were present said in respect to the working of the machines.   Answers to the questions were ruled out.   There was no error in this ruling not only because these individual random statements by persons having nothing directly to do with the operation of the machines could not be treated or considered as the statements or admissions of the company, but also because the defendant was entitled to take charge of and operate the machines itself before being called upon to accept or reject them.

As to the statements made by the manager of the factory having actual charge of the separators, any error

6. SAME.   in excluding his answers was cured by their admission, apparently without objection, l ater in the trial.

Plaintiff's expert having testified to visiting the creamery October 16th, and, finding a part, called the "cone," of one or both of the separators broken or injured,

7. SAME.   was asked if this condition would affect the operation of the machine, and the answer was ruled out on the ground that the answer called for was a conclusion, which was for the jury, and not for the witness, to draw from the facts shown.   We are inclined to the view that the question was not vulnerable upon the ground stated, but we think there was no prejudicial error in the ruling.   There was no offer to show, and the question itself does not suggest, in what manner the alleged break affected the work of the machines, or whether such break would produce the fault complained of by defendant.   *Moreover, while the witness stated that the injury was caused by attempting to take the machine apart without loosening the set screw, there was no attempt or offer to show when or by whom such attempt was made.   It may further be said that, after the ruling here challenged, plaintiff's witnesses did testify fully concerning the condition of the separators as well as to the alleged abuse and want of care to which they had been subjected in their operation by defendant.

V.   Plaintiff tendered fifteen separate instructions and fifteen special findings, which it asked to be submitted to the jury; all of which were refused.   We should not be justified in extending this opinion to consider these items separately.   Most of the instructions asked state propositions not in harmony with the law as we have hereinbefore interpreted it, and were, therefore, properly refused, and, in so far as they are correct, they are substantially covered by the court's charge.   The special

findings asked call for answers upon evidential, rather than ultimate, facts. As has frequently been held, the right to ask special findings does not go to the extent of 8. SPECIAL permitting a party to cross-examine the jury findings; how limited. upon the processes by which their verdict has been found. *Morbey v. Railroad Co.*, 116 Iowa, 84. The interrogatories submitted upon the court's own motion covered all the essential facts in controversy, and to have given those requested would have tended only to the confusion of the jury. The case appears to have been fairly tried, and we find no reason for sustaining the appeal.

The judgment of the court below is AFFIRMED.