INMAN MANUFACTURING COMPANY V. AMERICAN CEREAL
COMPANY, Appellant.

**Sales:** CONSTRUCTION OF CONTRACT: REJECTION. Where a contract
for the manufacture of machines, provides that the same in all
respects shall be to the full satisfaction of the purchaser, any ob-
jection thereto made in good faith will sustain a rejection of the
same.

**Evidence:** WAIVER: IMMATERIALITY. Letters from a manufacturer
complaining of difficulties interposed to installing his machines,
are inadmissible in an action for the price, when it appears that
the time for completion of the contract was subsequently extended,
and for the further reason that the proof of the acts complained of
was sufficient.

**Sales:** RECOVERY OF PRICE: INSTRUCTION. Where the contract pro-
vided for a complete machine when installed, it was error to in-
struct that payment should be enforced upon deducting from the
contract price the cost of a part found defective, provided the ma-
chine would do the work according to contract.

**Sales:** ACTION FOR PURCHASE PRICE. An absolute rejection by the pur-
chaser of machinery will authorize a suit for the price at any time,
although by the contract it was payable at a stated time after it
had been installed.

**Evidence:** ACCEPTANCE OF MACHINES. Where, by the same contract,
several machines are to be furnished, evidence of the purpose and
reason for the use of a part should be received, on the question of
an acceptance of all by reason of such use.

**Contracts:** ENTIRE AND SEVERABLE. To determine whether a contract
is entire or severable, reference must be had to the intention of
the parties as manifested by their acts, and to the circumstances of
the case.

*Appeal from Linn District Court.*— HON. H. M. REMLEY,
Judge.

WEDNESDAY, SEPTEMBER 28, 1904.

SUIT at law upon a written contract.   There was a trial

to a jury, and a verdict and judgment for the plaintiff.  The defendant appeals.— *Reversed.*

*Dawley, Hubbard & Wheeler,* for appellant.

*Grimm, Trewin & Moffit,* for appellee.

SHERWIN, J.— The plaintiff agreed to build certain machines for the use of the defendant in its mill at Cedar Rapids, and to install the same therein.  The several machines were to have a specified capacity operated by the number and class of workmen named in the contract.  The contract contained the following provision:  " The party of the first part further agrees that all of said machines are to be to the full satisfaction of the officers of the second party as to quality of work and life and durability of the machines before payment of the machines will be required."  The agreement was made on the 23d day of August, 1899, and the machines were to be in place within six months thereafter.  On account of delays however, some of which were caused by the failure of the machines to do the work agreed upon, this time was extended until the 22d of April, 1901, at which time the defendant in writing rejected the entire outfit.  The court gave the following instruction:  " The written contract between the parties, under which the machines claimed for in the first count of the plaintiff's petition were furnished, provides that the same were to be to the full satisfaction of the officers of the defendant as to the quality of work and life and durability of the machines before payment would be required.  You are instructed that the above condition of the contract did not give the defendant the right to arbitrarily and capriciously declare that it was dissatisfied with said machines, and thus refuse to accept the same.  The law requires the defendant to act reasonably and fairly, and to exercise fair, just, and honest judgment.  A dissatisfaction with the machines which would warrant the defendant in

*1. SALES: construction of contract; rejection.*

rejecting the machines must be founded upon some reasonable objection to the quality of the work, or life and durability of the machines. That which the law shall say a contracting party ought in reason to be satisfied with, that the law will say he is satisfied with." This instruction is wrong in principle and contrary to the decisions of this court. The language of the contract is plain and its meaning certain; the machines were to be to the full satisfaction of the defendant, and nothing less would satisfy the terms of the contract. / The plaintiff did not undertake to make and install machines which the defendant ought in reason to be satisfied with, and therefore ought to pay for, but he undertook to furnish machines which the defendant would be satisfied with, and by this contract he is bound, provided only that the defendant acted in good faith, and was honestly dissatisfied. This much and no more the law requires of the contemplated purchaser, and if his dissatisfaction is in good faith, it matters not whether it be reasonable or unreasonable, for the law will not make contracts for persons *sui juris*. *McCormick H. M. Co. v. Okerstrom*, 114 Iowa, 260; *Haney-Campbell Co. v. Creamery Ass'n*, 119 Iowa, 188. And see cases sustaining the rule cited therein. 6 Am. & Eng. Enc. of Law, 464; 9 Cyc. 620. The defendant asked an instruction which embodied the true rule, and it should have been given.

Letters written by Mr. Inman complaining of his difficulties with the superintendent of the Cedar Rapids mill, and of the lack of help to operate the machines, were put in

2. EVIDENCE: evidence over the objections of the defendant.
waiver; im-
materiality. We think these letters incompetent for two reasons: first, because of the agreement of March 18, 1901, wherein the time was extended to April 22, 1901, which constituted a waiver of previous difficulties, and was an acknowledgment that the plaintiff had not then completed its contract. *Osborn v. McQueen*, 67 Wis. 392 (29 N. W. Rep. 636); and, second, because the complaints were in them-

selves immaterial, for if the things complained of were prejudicial to the plaintiff, and were the acts of the defendant, it was sufficient to prove them.

Under the agreement, a complete printing press was to be installed, one fully equipped to do the work for which it was intended. It was therefore incumbent upon the plain-

3. SALES: recovery of price; instructions. tiff to have it so equipped at the time of its delivery to the defendant, and if there was a failure in this respect, the defendant was not bound to accept the press. It was therefore error to instruct that if the plates were worn out at the time, it would not defeat the plaintiff's recovery providing it had been demonstrated that the press would do the work according to the contract, and that a deduction of the price of new plates was all that the defendant could demand. The defendant did not agree to accept a machine which had been worn out in trials of its efficiency, and it is evident that a printing press that will not print because it has no plates or type from which an impression can be made is far from complete.

The purchase price of the machines was not due until thirty days after they were installed and accepted, but when

4. SALES: action for purchase price. the defendant, by its letter of the 22d of April, absolutely rejected the whole outfit, the plaintiff was not bound to delay suit for thirty days thereafter. *Crabtree v. Messersmith*, 19 Iowa, 179.

Whether there was error in permitting an amendment to the petition at a late hour of the trial, and error in not granting a continuance of the case on account thereof, we

5. EVIDENCE: acceptance of machines. need not determine in view of the fact that the case will be retried. The question whether there was an acceptance of the machines by the use of a part of them after the outfit had been rejected would depend largely upon the facts, and was therefore a jury question, and the court should have received the evidence offered explaining the purpose of its use and the reason therefor. The defendant had loaned the plaintiff money during the

time of the transactions, and as security therefor it was to hold possession of all of the machines, and under such an agreement we are of opinion that the use of any part thereof would not alone amount to an acceptance, and that an instuction covering this thought should have been given. The contract provided for several machines, some of which could manifestly be used independently of the others, as was the case with the shell machines, which were used after the 22d of April. It also named the price which was to be paid for each machine, and gave no aggregate amount. It provided that " payment for above machinery to be made in thirty days from installation, provided everything works to satis-- faction of the officers of the American Cereal Company."

Whether a contract is entire or severable depends upon the intention of the parties, manifested by their acts and by the circumstances of each particular case. The fact that **6. Contracts: entire and severable.** separate prices were named for the different machines is not necessarily controlling, and does not, of itself, always determine the intent of the parties. In this case, while the prices of each machine were named and the aggregate amount of the contract omitted, the purchase price of all machines was to be paid as an entire sum at a fixed time, and the contract itself, as we have seen, expressly provides that " all of said machines are to be to the full satisfaction " of the defendant before " payment of the machines will be required," and that payment is to be made in thirty days from installation, provided everything is to the satisfaction of the defendant. In addition to the terms of the contract, the acts of the parties all indicate that the entire plant was considered by them as an indivisible system, which was to work as a harmonious whole to the satisfaction of the defendant. We are of opinion, therefore, that the contract is entire, and that the court properly so instructed. On this subject generally, see *Norrington v. Wright,* 115 U. S. 188 (6 Sup. Ct. 12, 29 L. Ed. 366) ; *Barre v. Earl,* 143 Mass. 1 (8 N. E. Rep. 639) ; *Lucesco Oil Co. v. Brewer,*

66 Pa. 351; *Aultman & Taylor Co. v. Lawson,* 100 Iowa, 569.

The shell machines put into the defendant's mill at Akron, Ohio, were contracted for in the plaintiff's letter of June 22, 1900, and in the defendant's answer thereto of June 28th, and under the terms of the plaintiff's letter, which were accepted by the defendant, those machines were also to work to its satisfaction. The contract is therefore governed by the same rule which we have applied to the other machines.

For the errors pointed out, the judgment is REVERSED.