## LAMBORN & CO. v. PALMETTO GROCERY CO.

(Circuit Court of Appeals, Fourth Circuit. October 21, 1922.)

### No. 2010.

1. Sales ⬅️54—Courts cannot substitute terms in contract.

A statement.in a mercantile contract descriptive of some material incident is a condition precedent to enforcement of the contract, and courts have neither the means nor the right to determine why the parties specified the method of handling the subject-matter as they did, nor to substitute some other method equally as good for that agreed on.

2. Sales ⬅️196—Contract conditions may be waived.

Where a contract for sale of sugar by plaintiff to defendant required defendant within 5 days to furnish an irrevocable letter of credit, on fail-

⬅️For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

ure of defendant to furnish such credit, plaintiff had the right to cancel the contract and sue for damages, or to waive the conditions or extend the time for compliance without losing its rights under the contract.

**3. Estoppel ⬡52—Grounds of equitable estoppel stated.**

The doctrine of estoppel does not apply generally, unless there has been some intended deception in the conduct or declarations of the party to be estopped, or such gross negligence on his part as amounts to constructive fraud, by which another has been misled to his injury.

**4. Sales ⬡92—Evidence held not to show cancellation of contract as matter of law.**

Where a contract for sale of sugar to arrive later by steamship required buyer to furnish an irrevocable letter of credit within 5 days, which was not done, a letter from seller, stating that unless it was furnished "within a reasonable time" he would be compelled to cancel the contract *held* not to entitle buyer to claim a cancellation as matter of law, because the credit was not furnished within the ensuing six weeks, during which time there was correspondence between the parties in which seller was asking compliance.

In Error to the District Court of the United States for the Eastern District of South Carolina, at Columbia; Henry A. Middleton Smith, Judge.

Action at law by Lamborn & Co. against the Palmetto Grocery Company. Judgment for defendant, and plaintiffs bring error. Reversed.

Henry G. Connor, Jr., of Wilson, N. C. (Willcox & Willcox, of Florence, S. C., and Connor & Hill, of Wilson, N. C., on the brief), for plaintiffs in error.

A. F. Woods and W. F. Stackhouse, both of Marion, S. C., for defendant in error.

Before KNAPP and WADDILL, Circuit Judges, and GRONER, District Judge.

GRONER, District Judge. Lamborn & Co., plaintiffs in error, were engaged, among other things, in the buying and selling of sugar, with an office in New York City. On May 14, 1920, they issued and mailed to the trade a circular letter offering for sale a large quantity of Java white sugar at a fixed price per pound, f. o. b. cars Baltimore or Philadelphia, deliveries to be made on arrival of the steamer at a later date. The letter contained a full and explicit statement of the conditions under which acceptance c͏ͤ the offer could be had, and, among other things, declared that:

"To close contract on these sugars it will be necessary to furnish a confirmed irrevocable letter of credit for the quantity sold, * * * this to be made out in favor of Lamborn & Co., New York City, to be opened through a New York bank to be named later, within five days after confirmation of sale."

One of the letters was received in course of mail by Palmetto Grocery Company, defendant in error, which, on May 17th, telegraphed Lamborn & Co. as follows:

"Book two hundred bags Java sugar."

This order Lamborn & Co. acknowledged and confirmed by telegraph, and the same day forwarded by mail to the Palmetto Company

---

⬡For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

an executed contract covering the quantity of sugar ordered and containing the following paragraph:

"Payment to be made by net cash on presentation of sight draft, with invoice, and bill of lading attached in New York. Buyers to open within five days confirmed irrevocable letter of credit in favor of Lamborn & Co., New York City, for the full invoice value of 220 bags with Royal Bank of Canada, New York City, and bankers to confirm same to Lamborn & Co., New York City."

This contract having been received by the Palmetto Company, the latter, under date of May 19th, executed and returned the same to Lamborn & Co., with a letter of like date in which it said:

"We inclose contract signed by us for 200 ° ° ° bags white Java sugar. Too, we inclose letter of credit from Mer. & Plan. Bank, which we trust meets with your approval. If not, kindly send us a copy of which you like to have bank to sign."

The letter of credit inclosed with this communication was a guaranty by a local bank of the payment of the draft when presented with the bill of lading on arrival of the shipment in Mullins, S. C. The letter, contract, and guaranty were duly received by Lamborn & Co., who, on the 25th of May, addressed a letter to the proposed guarantor, the local bank, as follows:

"We regret we are unable to accept this guaranty, but as you will find in our contract with the Palmetto Grocery Company that we require that an irrevocable letter of credit be opened in our favor through a New York bank, preferably the Royal Bank of Canada, we wish to request that you open this letter of credit immediately through your New York correspondent.

"For your guidance in this matter, we are inclosing a copy of our letter of credit requirements. The amount of the letter of credit to be $10,624.77, and the expiration date January 31, 1920.

"Unless this letter of credit is issued within a reasonable period of time, we regret to state that we shall be forced to cancel your contract."

A copy of this letter was mailed by Lamborn & Co. to the Palmetto Company in a letter dated June 2d, which on June 7th was replied to by the Palmetto Company as follows:

"Your letter of the 2d.
"Our Mr. Cooper is away and will return in about 30 days. He will handle this matter on his return."

Apparently there was no further correspondence between the parties until June 16th, on which date Lamborn & Co. wrote the Palmetto Company, acknowledging the letter of the 7th referring to the absence of Mr. Cooper for 30 days, and stating:

"° ° ° ° We regret very much to advise you that we cannot hold this contract open this length of time, being in a position to sell these contracts immediately, and in accordance with the terms of the contract the letter of guaranty of the Merchants' & Planters' Bank of Mullins, S. C., will not meet our requirements.

"We believe that the bank can arrange this matter satisfactorily without waiting for Mr. Cooper's return, and we inclose a form that will guide them in opening the letter of credit."

The balance of the letter was further explanatory of the method in which the New York credit could be opened and an explanation of

the necessity of this to enable Lamborn & Co. themselves to make payment in accordance with their contract for the sugar proposed to be sold. A form of the letter demanded was inclosed, and a copy of the letter and papers was, on the same day, forwarded to the South Carolina bank, with an inclosure in which Lamborn & Co. expressed to the bank the "sincere trust" that, with these facts, it could see its way clear to accommodate the situation in accordance with the contract, and requesting that it would give the matter prompt attention.

There appears to have been no answer to this letter, either on the part of the Palmetto Company or the bank, and on July 8th following Lamborn & Co. again wrote the Palmetto Company, referring to the letter of June 16th, and continuing as follows:

"Up to the present writing we have received no advices from them [the bank] relative to opening this letter of credit, and we have not received any advices from you relative to their opening the letter of credit; so, immediately upon receipt of this letter, we would ask you to advise us definitely just what is being done in the matter, for as previously explained to you there is no necessity of us waiting for Mr. Cooper's return, as the bank can take care of this matter in accordance with the particulars shown on the form sent you."

To this letter the Mullins bank, on July 10th, replied, by telegraph, as follows:

"Please return letter credit Palmetto Gro. Co. They understand you canceled contract."

To which Lamborn & Co. replied:

"Contract Palmetto Grocery Company not canceled "

—and, also, on the same day, wired the Palmetto Company to like effect. The bank again wired Lamborn & Co., insisting that the contract had been canceled by them. This exchange of telegrams was followed by a letter from Lamborn & Co. to the Palmetto Company, and to the bank, in which they reviewed the negotiations hereinbefore set out, expressed surprise at the stand taken by the Palmetto Company, and insisted that the contract was in effect, and in due time thereafter notified the Palmetto Company of the shipment from abroad of the sugar and of its expected arrival. This notification was followed by a letter from the bank disclaiming any liability in the matter, and a letter from the Palmetto Company in which, reviewing the negotiations from its point of view, it concluded:

"We don't intend to accept this sugar and have notified our bank that we will not pay the draft; if the letter of credit was not good when you refused to accept it, we suppose it is still in the same form and therefore not acceptable to you."

At a still later date, on the arrival of the sugar, notice was sent both to the bank and to the Palmetto Company, each of which again denied liability. The shipment was thereafter made in accordance with contract and draft drawn on the Palmetto Company, with bill of lading attached, which, upon presentation, was refused, protested, and duly returned. Lamborn & Co. thereupon instituted this action, and at the

trial, on the record as thus made, the defendant asked for a directed verdict on the grounds that:

(1) No binding contract had been proved;
(2) That the conduct of the plaintiff discharged the contract, if one had been made;
(3) That no proper declaration of the steamer—or steamers—which was to bring the sugar had been made; and
(4) That the plaintiff was suing in the wrong form of action.

The learned judge of the lower court was of opinion that a binding contract was duly entered into between the parties, upon the execution of which Lamborn & Co. had a right to do one of three things, namely:

(a) To waive the creation of the stipulated credit at the Royal Bank of Canada;
(b) To extend the time within which this stipulated credit should be furnished beyond the 5-day period mentioned in the contract; or
(c) To sue upon the failure of the Palmetto Company to comply with the contract, or cancel.

[1] In each of these respects we think the conclusion of the lower court correct. The offer of the sugar contained, as we have already stated, the terms upon which a firm purchase of the same could be secured, and these terms required the establishment within 5 days of an irrevocable credit, equal to the purchase price of the sugar, in New York City. The contract executed by the parties contained a similar provision. The effort of the Palmetto Company, however well intended, to substitute for the New York letter of credit an indemnity from its local bank, was in no sense a compliance with the contract, and imposed on Lamborn & Co. no obligation to its acceptance. It has been repeatedly held that a statement in a mercantile contract descriptive of some material incident is a condition precedent to the enforcement of the contract, and that courts have neither the means nor the right to determine why parties, in their contract, specified the method of handling the subject-matter as they did, nor to substitute some other method, equally as good, for that agreed upon. Norrington v. Wright, 115 U. S. 188, 6 Sup. Ct. 12, 29 L. Ed. 366; Rolling Mill v. Rhodes, 121 U. S. 255, 7 Sup. Ct. 882, 30 L. Ed. 920.

[2] It is equally true, however, that the party for whose benefit the provision has been made may waive it altogether, or may extend the time within which its conditions may be met. It would seem to follow, therefore, as a matter of course, that upon the failure of the Palmetto Company to comply with the terms of its written engagement, Lamborn & Co. might have canceled the contract, and sued for any loss sustained by reason of the default, or, instead, they might have waived altogether the condition as to the establishment of the money credit in New York, or have extended the time for compliance, all without the waiver of any of their rights. The lower court was, however, of opinion that none of these courses was adopted, but that what they actually did was, in effect, to cancel the contract; for that the plain import of their communications to the Palmetto Company, if reasonably interpreted, left no other conclusion than that the continued default by the Palmetto Company to their demand to furnish the New York credit

would result in immediate cancellation, and that since this default, admittedly, did continue, the latter company had a right to assume they had acted upon their threat and in fact canceled the contract; and that, in the absence of any proof of damages accruing by reason of this fact, judgment should be given for the defendant.

The theory upon which the lower court arrived at this conclusion was that the correspondence between the parties after the making of the contract showed on the part of Lamborn & Co. an absence of that good faith which equity requires in its enforcement; that this correspondence exhibited Lamborn & Co. in an effort to maintain the dual position of maintaining the contract as valid if to their advantage and invalid if the advantage was the other way; that is to say, that on an advancing market the imminence of cancellation was held over the buyer's head, while on a declining market the contract was reinstated in full force, and that by reason of this they are now estopped, in good conscience, from insisting upon a compliance with its terms. A careful consideration of the evidence convinces us that the lower court was in error in thus deciding as a matter of law.

[3] The doctrine of estoppel does not apply, generally, unless there has been—

"some intended deception in the conduct or declarations of the party to be estopped, or such gross negligence on his part as amounts to constructive fraud, by which another has been misled to his injury." Brant v. Virginia C. & I. Co., 93 U. S. 326, 23 L. Ed. 927.

Or, as was aptly said in Chouteau v. Goddin, 39 Mo. 229, 90 Am. Dec. 462:

"When a party by his acts or words causes another to believe in the existence of a certain state of things, and induces him to act upon that belief so as to alter his own previous condition, he will be concluded from averring anything to the contrary against the party so altering his condition."

[4] Applying this well-established principle to the facts in this case, we find that immediately after the execution of the contract Lamborn & Co. insisted upon the New York credit. The letter of May 24th from their Savannah office, in which they said the failure to furnish the letter of credit would undoubtedly result in the contract being canceled, was written in advance of the receipt of the local letter of credit and has no particular relevancy. The letter of the following day, namely, May 25th, rejecting the offered letter of credit, and containing the statement that unless the letter of credit contracted to be furnished was so furnished "within a reasonable period of time" they would be forced to cancel the contract, can hardly be considered as a threat or an evidence of bad faith, or as anything more than an announcement of their then intention to insist "within a reasonable period of time" upon compliance with the contract. Indeed, we think, it may be said to be an extension or enlargement of the original contract providing for delivery of the letter of credit within 5 days, for, having regard to the distance separating the parties and the necessary consumption of time in the interchange of letters through the mail, a statement thus made, that it would wait a reasonable time, was a concession wholly for the benefit of the Palmetto Company. What under the circumstances was a rea-

sonable time we need not decide, for, between the date of the letter last referred to and the next letter of Lamborn & Co., the Palmetto Company had replied that its Mr. Cooper was out of town for 30 days and "would handle this matter on his return," to which Lamborn & Co. replied, stating their regret that they could not hold the contract open that length of time, but suggesting a method in which the subject might be arranged in the meantime through the Palmetto Company's local bank, and at the same time expressing the hope, in a letter to the South Carolina bank, that, with the method proposed by them, understood, the bank would give the matter prompt attention.

Even this, we think, could not be construed as a matter of law as a threat of immediate cancellation, but rather as a continuation of the negotiations in which the next move was logically in the hands of the Palmetto Company. This move it failed to make, and no further communications passed between the parties until July 8th, a little more than 3 weeks after the letters just referred to, at which time Lamborn & Co. again asked that the matter have the immediate attention of the Palmetto Company and its local bank, and immediately were informed of the understanding of each of the latter that the contract had been canceled. To say, as a matter of law, that this interval of inactivity, in the light of all that had preceded, was sufficient in itself to cause the Palmetto Company to believe that the contract had been canceled, and therefore to relieve it of its obligation to furnish the letter of credit or to take the sugar, is, it seems to us, going farther than the plain import of the language justifies, and that it was error so to hold. Whether the contract was in fact canceled, or whether the acts and conduct of Lamborn & Co. were of such character as reasonably to induce the belief on the part of the Palmetto Company of the cancellation of the contract, and thus to mislead it to act in that belief to its prejudice, are questions which we think should be, by appropriate instruction, submitted to a jury for decision.

And since this case must, for the reasons pointed out, be sent back for a new trial, we deem it unnecessary to pass upon the other points raised, as they may not be raised in the trial to be had, except to say that we are of opinion that, if the plaintiffs are entitled to recover in this case at all, it is on a breach of contract, for such damages as they sustained by reason of the defendant's refusal to accept the sugar, and such damages should be limited to the difference between the selling price and the contract price of the sugar at the time and place of delivery. Without such proof, the plaintiffs could only have nominal damages.

Reversed.