[Civ. No. 3182. Third Appellate District.—December 15, 1926.]

JOHN S. HULL, Appellant, v. CARL RAY, Respondent.

[1] FINDINGS—LIBERAL CONSTRUCTION—IRRECONCILABLE CONFLICT—AP-PEAL.—Findings should be liberally construed so as to support the judgment if possible; but where findings are irreconcilably in conflict, it is impossible for the appellate court to determine which findings controlled the trial court in rendering its judgment, and the judgment must be reversed.

[2] CONTRACTS — SALE OF REGISTERED CATTLE — FAILURE TO PROCURE TRANSFER OF REGISTRATION—RESCISSION.—In this action to rescind a contract for the sale of certain pedigreed cattle registered with a designated cattle club, plaintiff could not complain because defend-ant failed or refused to procure the transfer of registration of the cattle upon the books of said cattle club, where such club had no title to the cattle in question and no authority to transfer title, and the contract of sale did not require defendant to obtain such transfer, and certificates were tendered to plaintiff which author-ized him to procure the transfer upon application.

[3] ID.—BILL OF SALE—REQUISITES AS TO FORM AND CONTENTS.—A bill of sale is a written agreement by which one person transfers his title to goods or chattels to another person; and it is not required to be under seal, nor couched in any particular form, so long as it sufficiently describes the property sold and contains language importing actual transfer of title.

1. See 24 **Cal. Jur.** 965, 1009.
3. See 23 **R. C. L.** 1260.

[4] ID.—AGREEMENT TO FURNISH GOOD AND SUFFICIENT TITLE.—Where the agreement for the sale of pedigreed cattle requires the seller to furnish the buyer with a "good and sufficient bill of sale, together with a warranty of title," the use of the term "good and sufficient" implies that the title is to be clear and the stock unencumbered.

[5] ID. — RECEIPT FOR PURCHASE PRICE — ABSENCE OF TRANSFER OF TITLE.—A writing entitled a bill of sale, but which merely recites that the seller received of the buyer payment in full for a certain number of cattle bought on a specified date, and does not purport to acknowledge the transfer of title to the cattle, is nothing more than an ordinary receipt, and is not sufficient to constitute a bill of sale.

[6] ID.—DELIVERY OF POSSESSION—INTENT TO TRANSFER TITLE — EVIDENCE—WRITINGS.—While the actual delivery of personal property is a significant fact indicating an intention to transfer title, it is not conclusive, but the question as to whether the title to personal property actually passes to the purchaser upon its delivery depends upon the intention of the parties, which must be determined by the facts and circumstances of the case; and if the transaction is evidenced by an instrument in writing, the intention of the parties is to be determined primarily by reference to such written document.

[7] ID.—RECORD AND ACTUAL TITLE—DISTINCTION — EVIDENCE. — There is a clear distinction between record title and actual title to either personal property or real estate; and, regardless of the ownership of actual title, one who contracts to deliver not only the actual title, but record evidence of that title as well, has not fulfilled his agreement until the document purporting to convey the title has been delivered.

[8] ID. — SALE OF PERSONAL PROPERTY — CODE WARRANTY. — The warranty of title to personal property which is conferred by section 1765 of the Civil Code is not equivalent, in every respect, to a written warranty of title.

[9] ID. — POSSESSION OF PERSONAL PROPERTY—TITLE—PRESUMPTION—WRITTEN WARRANTY—CONSIDERATION—RESCISSION.—The mere possession of personal property in the hands of the purchaser is presumptive evidence of title, but it is not conclusive; and. an agreement to deliver a written warranty of title to personal property, upon the sale thereof, is a material and valuable consideration, the refusal to comply with which would constitute a breach of contract and authorize an action for rescission pursuant to section 1688 of the Civil Code.

<hr>

6. See 22 Cal. Jur. 942; 24 R. C. L. 15.

[10] ID. — SALE OF CATTLE — COMPLIANCE WITH CONTRACT — IRRECON-
CILABLE FINDINGS — REVERSAL OF JUDGMENT. — Where defendant
agreed to furnish plaintiff a "good and sufficient bill of sale,
together with a warranty of title" in connection with the sale of
certain registered pedigreed cattle, and the findings in plaintiff's
action to rescind the contract certified that the only documents
tendered by defendant to plaintiff, pursuant to said contract of
sale, consisted of two certain documents which were termed "bill
of sale" and "transfer of ownership," respectively, but which
were not sufficient to comply with the agreement of sale, and the
court also found that defendant declined and refused to supply
plaintiff with any other or different instruments, but the court
further found that "defendant did not, and has not, at any time
failed or refused to furnish the plaintiff the warranty of title and
certificates of record, transfer of ownership of said registered
cattle," such findings are irreconcilable and the judgment must
be reversed.

---

(1) 4 **C. J.**, p. 1057, n. 84 New, p. 1167, n. 85; 38 **Cyc.**, p. 1966,
n. 86, p. 1986, n. 82.  (2) 35 **Cyc.**, p. 160, n. 25.  (3) 7 **C. J.**, p. 1181,
n. 58 New; 35 **Cyc.**, p. 162, n. 41, 45.  (4) 35 **Cyc.**, p. 160, n. 25,
p. 394, n. 97.  (5) 35 **Cyc.**, p. 162, n. 42, 43.  (6) 35 **Cyc.**, p. 308,
n. 64, 65, 69, 71.  (7) 35 **Cyc.**, p. 160, n. 29 New.  (8) 35 **Cyc.**,
p. 394, n. 97.  (9) 35 **Cyc.**, p. 136, n. 33, p. 160, n. 29 New, p. 202,
n. 28.  (10) 4 **C. J.**, p. 1057, n. 84 New, p. 1167, n. 85; 38 **Cyc.**,
p. 1966, n. 86, p. 1986, n. 82.

APPEAL from a judgment of the Superior Court of
Orange County. F. C. Drumm, Judge. Reversed.

The facts are stated in the opinion of the court.

Sloane & Sloane for Appellant.

Fred W. Morrison for Respondent.

THOMPSON (R. L.), J., *pro tem.*—This is an appeal from
a judgment rendered in favor of defendant in a suit to re-
scind a contract to purchase certain registered· cattle. Ap·
pellant asserts that the findings of the trial court are so con-
flicting and irreconcilable as to require the reversal of the
judgment. The evidence adduced at the trial is not before
this court.

The findings of the trial court were to the effect that on
November 13, 1922, defendant agreed in writing to sell

plaintiff fourteen head of registered cattle and four head
of unregistered stock for the sum of $3,500; that said pedi-
greed stock was registered with the American Jersey Cattle
Club of New York and that the defendant held the certifi-
cates of such registered stock in his own name; that by the
terms of said contract defendant agreed to "execute and
deliver to this plaintiff a good and sufficient bill of sale of
said cattle, together with a warranty of title"; that as part
consideration for the purchase of said cattle plaintiff relied
on the fact that said cattle were blooded and registered,
which would render them more valuable for breeding pur-
poses and for resale; "that the defendant did not, and has
not, at any time failed or refused to furnish the plaintiff
the warranty of title, and certificates of record, transfer of
ownership of said registered cattle," but that the only in-
struments which defendant did supply to plaintiff pursuant
to said contract were tendered on November 13, 1922, and
consisted of the following:

"Bill of Sale.

"April 10th, 1923.

"Received of John S. Hull, payment in full for twenty
head of Jersey's, bought of me on November 13th, 1922.

"(Signed)   CARL RAY."

And accompanying this document were separate printed
declarations of ownership of said blooded stock, and au-
thorizations for said cattle club to transfer to plaintiff the
registration thereof. Each of these documents was filled
out with the name, number, history and description of the
said blooded animals, in the following language:

"Transfer of Ownership,

"Send this paper for record to the American Jersey
Cattle Club No. 324 West 23rd St. New York.

"(See directions on back.)

"I sold to John S. Hull of Nester, Calif., the following
Jersey animal, ...... (male; female.) Name, ...... Herd
register No. ...... Date of delivery to buyer, ......

"I hereby authorize the transfer of ownership as above,
to be registered on the books of the American Jersey Cattle
Club.

"(Signed.)   CARL RAY, Lankershim, Calif."

The court further found that the defendant did furnish to plaintiff "warranty of title, and certificates of record, transfer of ownership, indorsed to the plaintiff, and authorizing the American Jersey Cattle Club to transfer said registered cattle into the name of plaintiff"; that the "defendant declined and refused to supply plaintiff with any other or different instruments"; that on April 4, 1923, "plaintiff had fully performed all of said contract on his part," and thereupon demanded of the defendant a good and sufficient bill of sale of all of said cattle, together with the warranty of title in compliance with their written agreement, and on May 5, 1923, plaintiff offered to restore to defendant all of said cattle, and gave notice of rescission of said sale.

Upon these findings the court rendered judgment for the defendant.

It is not pretended that any instrument tendered to the plaintiff, referred to or described any of the unregistered cattle which were purchased, nor that the title to the cattle was actually defective.

Appellant contends that the findings are fatally conflicting and that the defendant has failed and refused to supply him with (1) a good and sufficient bill of sale, (2) warranty of title to said stock, or (3) certificates issued by the American Jersey Cattle Club of New York, transferring upon their books, the title of said cattle, to plaintiff, and that the judgment should therefore be reversed.

[1] Where findings are irreconcilably in conflict the judgment must be reversed, for the reason that it is impossible, under such circumstances, to determine which findings controlled the court in rendering its judgment. (*Los Angeles Land Co.* v. *Marr*, 187 Cal. 126 [200 Pac. 1051]; *Estep* v. *Armstrong*, 91 Cal. 659 [27 Pac. 1091] *Learned* v. *Castle*, 78 Cal. 454 [18 Pac. 872, 21 Pac. 11]; *Manly* v. *Howlett*, 55 Cal. 94; *Rand* v. *Columbian Realty Co.*, 13 Cal. App. 444 [110 Pac. 322].) But findings should be liberally construed so as to support the judgment if possible. (*Ames* v. *City of San Diego*, 101 Cal. 390 [35 Pac. 1005]; *Goodwin* v. *Snyder*, 70 Cal. App. 98 [232 Pac. 763].)

[2] The plaintiff cannot complain because the defendant has failed or refused to procure the transfer of registration of the blooded stock upon the books of the American

Jersey Cattle Club. Nowhere in the contract does it appear that the defendant agreed to obtain this transfer. The name of the cattle club is not even mentioned in the contract. This club had no title to the stock in question and no authority to transfer title. We assume that it merely purported to keep for its members an authentic record of the ownership, history, and description of blooded stock, which upon application it would certify or transfer, upon the payment of customary fees, not as a public record, but rather as a private enterprise. The contract involved in this case had nothing to do with membership in this cattle club nor with the procuring of a transfer of the record of ownership upon the books of that organization. But certificates were tendered to plaintiff which authorized him to procure the transfer upon application. We are of the opinion that this was a compliance with the contract, so far as that feature of the agreement is concerned. It therefore follows that the trial court properly found that the defendant was not required to procure the actual transfer of the record of ownership of the blooded cattle on the books of the American Jersey Cattle Club.

[3] But the defendant did agree to "execute and deliver to the plaintiff a good and sufficient bill of sale" to all of said cattle, both registered and unregistered stock, and to furnish him with a "warranty of title."

A bill of sale is not required to be under seal, nor couched in any particular form (35 Cyc. 162), so long as it sufficiently describes the property sold and contains language importing actual transfer of title. A bill of sale is a written agreement by which one person transfers his title to goods or chattels to another person. (Black's Law Dictionary, 134; *Berry* v. *Robinson,* 122 Ga. 575 [50 S. E. 378].) In *Putnam* v. *McDonald,* 72 Vt. 4 [47 Atl. 159], it was held that a signed instrument in the following language: "Terms cash. P. to M. dr. one bicycle, $47.50, paid July 27th, 1896," constituted a mere receipt, and was not a bill of sale. The court there said: "A bill of sale is a writing evidencing the transfer of personal property from one person to another. The nature of the writing would seem to require that it contain some statement of the fact of transfer. . . . In *Houghton* v. *Carpenter,* 40 Vt. 588, it was said that a bill of sale must contain the substantial

elements of a contract, and one of the defects pointed out in this writing, was that it did not contain any words importing a transfer of title. Under the English rule which requires the registration of bills of sale, it is held that the receipt for the purchase money of goods sold, not amounting on the face of it to a grant or transfer, is not a bill of sale.''

[4] In the instant case the defendant agreed to furnish plaintiff with a *"good and sufficient* bill of sale, together with a warranty of title.'' The use of the term ''good and sufficient'' implies that the title was to be clear and the stock unencumbered. Chancellor Kent says: ''A covenant to execute and deliver a good and sufficient deed to a piece of land does not mean merely a conveyance good in point of form, for that would be a covenant without substance; but it means an operative conveyance, one that carries with it a good and sufficient *title* to the lands to be conveyed.'' (*Clute* v. *Robinson,* 2 Johns. (N. Y.) 595, 613; *Story* v. *Conger,* 36 N. Y. 673 [93 Am. Dec. 546].)

The respondent contends that the foregoing receipt, together with the transfer documents taken together, constitute a sufficient bill of sale in point of form, and that by the sale and delivery of the cattle under the provisions of section 1765 of the Civil Code the title was automatically warranted by law as completely as though the defendant had specifically incorporated a written warranty of title in the documents which he tendered to plaintiff. It is true that section 1765 of the Civil Code provides: ''One who sells, or agrees to sell personal property as his own, thereby warrants that he has a good and unencumbered title thereto.'' And it was said in *Gross* v. *Kierski,* 41 Cal. 111, 115: ''The sale and delivery of the goods in possession, where nothing is said about the title, is precisely equivalent to an express warranty of title, and the facts being ascertained, the rights and liabilities of the parties are exactly the same.''

[5] The document hereinbefore mentioned, termed a ''bill of sale,'' is nothing more than an ordinary receipt for the purchase price of cattle. It does not purport to acknowledge the transfer of title to the stock. The form and language used in that document are insufficient to constitute a bill of sale. The second instrument hereinbefore men-

tioned, which is termed a "transfer of ownership," does not purport to be a present transfer of title, but seems to be merely an acknowledgment that the animal described in the document had been sold to John S. Hull, and authorizing the American Jersey Cattle Club of New York to transfer the record of ownership thereof on their books. Even though it may be said that the two documents, taken together, are sufficient in form to constitute a bill of sale as between the parties to such cattle as are described in these certificates of transfer, yet there was no such certificate executed with respect to any of the unregistered cattle. As to these four unregistered cattle, there is absolutely no document which even purports to represent a bill of sale.
[6] The mere delivery of personal property is not conclusive as to the passing of title thereto. The question as to whether the title to personal property actually passes to the purchaser upon its delivery depends upon the intention of the parties, which must be determined by the facts and circumstances of the case. While the actual delivery of personal property is a significant fact indicating an intention to transfer title, yet it is not conclusive. (35 Cyc. 308; *South S. F. Packing etc. Co.* v. *Jacobsen,* 183 Cal. 131 [190 Pac. 628].) If the transaction is evidenced by an instrument in writing the intention of the parties is to be determined primarily by reference to the written document. (22 Cal. Jur. 948, sec. 34; *Potts Drug Co.* v. *Benedict,* 156 Cal. 324 [25 L. R. A. (N. S.) 609, 104 Pac. 432].)
[7] There is a clear distinction between record title and actual title to either personal property or real estate. Regardless of the ownership of actual title, one who contracts to deliver not only the actual title, but record evidence of that title as well, has not fulfilled his agreement until the document purporting to convey the title has been delivered. In the case of *Thompson* v. *Richards,* 14 Mich. 172, 185, where plaintiff agreed to pay certain indebtedness, "when Richards signs off all his rights and title in said property," the court said: "We think the agreement . . . as to all tangible personal property . . . which would pass by mere delivery, would be satisfied by a delivery to the defendants, so as to place them in full possession and control, and an acceptance of the same, *unless written evidence of the trans-*

*fer was especially requested.* But if the defendants should refuse to accept such delivery without written evidence of the transfer of title, they would have a right to insist upon it, and might refuse to accept a delivery without it. . . . ''

[8] Nor is the warranty of title to personal property which is conferred by section 1765 of the Civil Code equivalent, in every respect, to a written warranty of title. [9] The mere possession of the personal property in the hands of the purchaser is presumptive evidence of title, but it is not conclusive, for the reason that the actual transfer of title depends upon the intent of the parties. Where there is a written warranty of title that document, in the absence of fraud or mutual mistake, will determine the intent of the parties. But where there is no written evidence of the warranty of title, the seller may show by oral testimony that in delivering possession of the property he had no intention of warranting the title. (*Miller* v. *Van Tassel*, 24 Cal. 459; *Johnson* v. *Powers*, 65 Cal. 179 [3 Pac. 625].) It is therefore apparent that an agreement to deliver a written warranty of title to personal property, upon the sale thereof, is a material and valuable consideration, the refusal to comply with which would constitute a breach of contract and authorize an action for rescission pursuant to section 1689 of the Civil Code.

For the reason that the defendant has failed and refused to deliver a bill of sale to plaintiff for the four unregistered head of cattle and has failed and refused to deliver a written warranty of title to any of the property sold, he has not complied with his written contract of sale.

[10] The findings are in conflict and incapable of being reconciled in that they certify that the only documents tendered by the defendant to plaintiff, pursuant to their contract of sale, consisted of the two instruments hereinbefore set out, which we are of the opinion fail to comply with the agreement to ''execute and deliver a good and sufficient bill of sale, together with a warranty of title.'' And upon the contrary the trial court has found ''that the defendant did not, and has not, at any time failed or refused to furnish the plaintiff the warranty of title and certificates of record, transfer of ownership of said registered cattle,'' while it is further found that ''the defendant declined and refused

to supply plaintiff with any other or different instruments.''
These findings are irreconcilable, and the judgment must
therefore be and is reversed.

Plummer, J., and Finch, P. J., concurred.