MORTEMOTH COMPANY, Appellee, v. HOME FURNITURE COMPANY, Appellant.

No. 40321.

November 18, 1930.

*Thomas & Loth,* for appellant.

*Price & Burnquist* and *John E. Mulroney,* for appellee.

KINDIG, J.—The plaintiff-appellee, Mortemoth Company, alleges in its petition that it sold the defendant-appellant a quantity of "moth-proofing" crystals for a named price, and  delivered the property designated, according to the contract. Continuing the allegations in its petition, the appellee stated that the appellant, although receiving the goods, refused and neglected to pay the agreed price therefor. Appellant, in its answer, for a defense, set forth, first, a general denial, and second, an affirmative defense, to the following effect: That the property in question was purchased from the appellee upon the conditions that the latter, before shipment, would furnish the appellant "a written guaranty in a form suitable to the [appellant] that the crystals would kill all moths and moth larvæ which might be present in upholstered furniture, and prevent such moths or larvæ from entering such furniture." Further, the appellant declared in its answer that the appellee did not furnish the guaranty, and therefore the goods, although shipped, were never in fact accepted.

By way of reply to that answer, the appellee pleaded: First, that the foregoing guaranty was in fact furnished the appellant; and second, that the appellant received and accepted the goods, and waived any different guaranty than the one actually furnished.

Upon those issues the trial proceeded until the appellee, as plaintiff, had rested its case. Whereupon the district court, as stated in the preamble to this opinion, directed a verdict against

the appellant, as defendant, for the full amount of appellee's claim. A reversal is demanded by the appellant for the reason that the evidence discloses the agreement for the warranty aforesaid. This being true, appellant says, the trial court could not say, as a matter of law, that it rejected the guaranty offered by appellee in bad faith, or out of mere arbitrary caprice. That being the fact, appellant further claims, it is for the jury to say whether it, upon receiving the goods in question, waived the right to obtain the guaranty before paying the purchase price.

In reply thereto, and for the support of the district court's action, the appellee claims: First, that the guaranty furnished the appellant, when properly construed, was in full compliance with the contract; and second, if the foregoing is not true, nevertheless there can be a recovery because the appellant, by receiving the property in question, waived its right to delay payment therefor until after the receipt of the proper guaranty. Such, in a general way, is the controversy between the contesting parties.

I. There is little, if any, dispute concerning the fact that appellant was to receive from the appellee a written guaranty satisfactory to it. According to the evidence, appellant was to obtain that guaranty before the goods were shipped. About that there is no serious controversy. The Home Furniture Company is a corporation operating at Fort Dodge, and, on October 29, 1928, a salesman for the appellee company called at the appellant's place of business, and endeavored to sell Mortemoth crystals. J. K. Trauerman, the appellant's agent at Fort Dodge, had no previous experience with this particular product. He stated that the appellant would not be interested unless Mortemoth could be sold to appellant's customers for the purpose of "killing moths and moth larvæ" that were already in their furniture. Appellee's salesman replied that Mortemoth crystals would "kill moths and moth larvæ" which were "already in the furniture" at such customers' homes. Then appellee's salesman told Trauerman, appellant's agent, that the appellee company would, in writing, guarantee the moth-killing qualities of the crystals. Said guaranty, the salesman asserted, was to be such as would satisfy the appellant. Also, the salesman declared that the appellee would furnish appellant the written guaranty before the goods were shipped. Under those conditions, the appellant placed an

order, and the salesman for appellee marked thereon the words, "want letter."

It was within appellant's right to contract for the guaranty, as well as the merchandise. Having thus contracted, the appellant was not obliged to accept the Mortemoth products without the written guaranty. Sections 9940, 9944, and 9970 of the 1927 Code; *Hull v. Ray*, 80 Cal. App. 284 (251 Pac. 810, 813). See *Capital City Carriage Co. v. Moody & Son*, 135 Iowa 444; *Atlas Torpedo Co. v. United States Torpedo Co.* (Tex. Civ. App.), 15 S. W. (2d Ser.) 150, 152. In view of the circumstances, it is not enough for appellee to say that the crystals offered in fact would "kill moths and moth larvæ already" in furniture. To fulfill the contract, it was incumbent upon the appellee, not only to furnish the goods, but also to discharge the obligation of executing and delivering the proper warranty. For analogous cases, see *Redhead Bros. v. Wyoming Cattle Inv. Co.*, 126 Iowa 410 (local citation 419); *Hull v. Ray*, 80 Cal. App. 284 (251 Pac. 810), supra; *Lamborn & Co. v. Palmetto Grocery Co.*, 284 Fed. 427.

How is the sufficiency of the guaranty to be determined? An answer to that inquiry is important here. On the one hand, it is maintained by appellee that a legal satisfaction is enough and if the warranty in fact covers the quality of the goods concerned, the contract has been performed; while, on the other, appellant argues that the guaranty must be such as will satisfy it, when acting honestly and in good faith. This question under analogous, if not exact, facts has been before this court upon numerous occasions. *Haney-Campbell Co. v. Preston Cream. Assn.*, 119 Iowa 188; *Inman Mfg. Co. v. American Cereal Co.*, 124 Iowa 737; *United States Tr. Co. v. Incorporated Town of Guthrie Center*, 181 Iowa 992; *Balcom v. Serenado Mfg. Co.*, 193 Iowa 668. Manifestly, a purchaser of goods is entitled to his bargain. *H. D. Best Co. v. Federal Terra Cotta Co.*, 224 App. Div. 618 (231 N. Y. Supp. 483). So, if such bargain includes a written guaranty, the vendee is entitled to the same. Here, the stipulation concerning the warranty was that it should satisfy the appellant. When interpreting the contract between the vendor and the vendee, it is necessary to give effect, if possible, to the entire language thereof. The term "satisfactory to the appellant" has its significance, which cannot be disregarded. If, then, the appellee's theory

were to be adopted as the rule, the contract would be construed as if the term "satisfactory to the appellant" were entirely omitted. That omission, in effect, would deprive the appellant of its bargain under the sale agreement. Appellant is clearly entitled, under the contract here involved, to receive from appellee a written warranty which in its terms satisfies the former. Such warranty is not furnished by appellee if the appellant is not thus satisfied.

A warranty which may, in fact, cover the situation is not sufficient if appellant, when acting honestly and in good faith, is not satisfied therewith. Support for this doctrine is furnished in the above-cited cases. *Haney-Campbell Co. v. Preston Cream. Assn.* (119 Iowa 188), supra, was a case involving the sale of a churn, where the warranty was that it be satisfactory. During the discussion, we said, on page 194:

"* * * he [the purchaser] may refuse to keep and pay for it [the churn], providing only that he acts in good faith, and is honestly dissatisfied; and in such case the fact that others would regard the article purchased as good and satisfactory, or that it worked well in other hands, would be immaterial * * *."

Likewise, *Inman Mfg. Co. v. American Cereal Co.* (124 Iowa 737), supra, involved the purchase of machines which were to meet "the full satisfaction of the officers of the second party [the purchaser]." While discussing the significance of the word "satisfaction," this court said, on page 739:

"The plaintiff [the vendor] did not undertake to make and install machines which the defendant [the vendee] ought in reason to be satisfied with, and therefore ought to pay for, but he [the vendor] undertook to furnish machines which the defendant [vendee] would be satisfied with, and by this contract he is bound, provided only that the defendant [vendee] acted in good faith, and was honestly dissatisfied. This much, and no more, the law requires of the contemplated purchaser; and if his dissatisfaction is in good faith, it matters not whether it be reasonable or unreasonable, for the law will not make contracts for persons *sui juris.*"

There was involved a sale of bonds in *United States Tr. Co.*

*v. Incorporated Town of Guthrie Center* (181 Iowa 992), supra. In the discussion we stated:

"The point is as well stated by the Supreme Court of Nebraska in *Thurman v. City*, 90 N. W. 253, a bond bid case, as it is anywhere. It is there said that, where a party stipulates that his contract of purchase shall be subject to the opinion of his attorney as to the title to or legal status of the thing to be purchased, the plain purpose being to make his act dependent upon the personal opinion of his legal adviser, the sole requirement is that such legal adviser in fact pass upon the subject, and give his honest opinion; and the merits of an honest opinion, actually given, are not subject to review—that his decision is conclusive, provided he really passes upon the question, and reaches a conclusion honestly, whether his conclusion is right or wrong. The question is not whether the buyer 'ought to be,' but whether, acting in good faith, he is, satisfied. * * * Good faith is the sole limitation."

Again, in *Balcom v. Serenado Mfg. Co.* (193 Iowa 668), supra, this court discussed a proposition involving the sale of goods which were to meet the purchaser's "full approval." On pages 671 and 672, we declared:

"Under the authorities, plaintiff [the purchaser] was not required to state the specific defects [in the goods]. He must act honestly in the matter, and his dissatisfaction must not be arbitrary or feigned. Some of the cases hold that, under such a contract as we have here, if the article is such as the buyer ought to be satisfied with, he is bound to accept it. The better view, however, is that, if there is no bad faith, and the buyer is honestly dissatisfied, his judgment is conclusive, irrespective of whether he had reasonable grounds for dissatisfaction or not."

See, also, *Nickle v. Mann & Clute,* 211 Iowa—.

Obviously, under the rule established in this court, the question in the case at bar is not whether there was legal satisfaction and the written warranty in fact was sufficient to cover the situation, but rather, did the warranty offered meet the occasion to the satisfaction of appellant while it was acting honestly and in good faith? Hence, there remains for consideration the additional inquiry as to whether the district court, under the

facts and circumstances here presented, could say, as a matter of law, that appellant, in refusing to accept the written warranty by appellee, was not in fact acting honestly and in good faith. At this place the record is clear that the district court could not legally reach such conclusion as a matter of law. After the order for the Mortemoth Products was taken by appellee's salesman, October 29, 1928, the appellant, on November 8th thereafter, wrote the appellee as follows:

"We have taken over a stock that has a quantity of Mortemoth on hand and we ask that you cancel this order, which we will reinstate when we reduce our stock."

As an answer to that letter, the appellee wrote appellant, November 10, 1928:

"* * * We are sorry we cannot comply with your request, since your order went forward yesterday, a day before we received your letter. Also your shipment was imprinted with your name and address and has been prepared several days. * * *"

Upon receiving that letter, the appellant again wrote appellee, December 5, 1928, to this effect:

"When your representative took our order for Mortemoth, it was given contingent upon a letter from you directly guaranteeing the product. This letter we told him we wanted before the shipment was made. To date the merchandise has been received, but not your letter of guarantee. Your representative made the notation on the bottom of the order, which you will find, with reference to this letter of guaranty and advised us that he would write you personally about it. Your invoice, though due, will not be paid until we receive a satisfactory letter of guaranty."

Pretending to comply with the above request, the appellee, on December 11th of that year, sent the following letter to appellant:

"We regret that your request for a letter of guarantee was overlooked in the first instance. In compliance with your letter of December 5th, we are pleased to send you this guarantee herewith.

"Mortemoth is warranted by us to be of A-1 character as a moth preventative and a reliable protection of furniture, car-

pets and textiles against attack by clothes moths or other fabric pests, providing it is used in accordance with the printed and published directions accompanying the product. The product is guaranteed by us to be absolutely 100% active and efficient, and to contain no inert ingredients whatever, and to give protection till the last grain is volatilized. * * * You will find, as time goes on, that this process of protecting furniture, becomes of great and stable value to you, as it has to most of the large stores throughout America. In closing we desire you to be assured that this product is guaranteed to be exactly as represented to you.''

Not satisfied with the foregoing, appellant, on December 17th, wrote appellee:

''This is in reply to your letter of December 11th. Your salesman sold us the Mortemoth on the basis that it would not only prevent moths, but would kill moths and moth larvæ if these were present in the furniture before the Mortemoth. This is what we want you to guarantee.''

Writing again, on January 7, 1929, appellee says:

''This is in reply to your letter of December 17th. The guaranty you request as to the killing power of the product is given to every one of our customers and is therefore given you. On each bottle you will find in red letters the statement and warranty that Mortemoth kills moths. You will find the product one of merit, deserving of your confidence. You will find it excellent protection for your upholstered furniture and will, we hope, continue to be used by you as long as you continue in business.''

Refusing to accept the warranty offered, appellant, on January 23d thereafter, wrote appellee:

''This is in reply to your letter of January 7th, and inasmuch as you have shown by your letter that you were avoiding a definite answer to our letter of December 17th, we are returning to you the merchandise in question.''

Following the writing of that letter, the appellant, about January 23d, reshipped to the appellee at Milwaukee, Wisconsin, the Mortemoth crystals in question. Appellee, however, was un-

willing to let the matter rest there, and, on February 14th, wrote appellant to this effect:

"We cannot possibly see how our letter of January 7th can be construed as an avoidance of the questions asked by you or of the guaranty you requested. We have guaranteed this product to you to the fullest possible extent, and warrant it to you to be fully as represented. Since you have arbitrarily and without cause taken it upon yourself to return this shipment, we cannot do otherwise than to refuse it, and we hereby advise you and serve notice on you that this return shipment is not being accepted by us and will not be accepted by us. We have done everything compatible with good business in complying with your request. This merchandise was especially imprinted with your name and is therefore of no value to us. In the interests of good business we urge you to recall this shipment at once and consummate this transaction as per original agreement. In the event of your refusal to do so, we shall be forced to resort to legal action to protect our interests."

Appellant refused to reconsider and again receive the goods. Consequently, the present suit was instituted.

Does the foregoing correspondence indicate that appellant refused the guaranty dishonestly or in bad faith? Could not appellant well refuse the offered guaranty on the theory that it did not specifically at any place, without qualification, warrant that Mortemoth would "kill moths and moth larvæ" which were already in the furniture? No doubt the warranty declared that the Mortemoth crystals would protect furniture. That, however, was not enough; for the order was placed upon the express condition that the product would not only protect against moths and moth larvæ, but that it would kill the moths and the larvæ already in the furniture. Reference is made in appellee's letters to the labels, etc., on the bottles. Those labels, however, do not in express terms guarantee that the crystals will kill moths and larvæ already in the furniture. Much is said in the labels appearing on the bottles concerning what Mortemoth will do for garments, etc., in closets and cabinets. On another side of the bottle, there appears a label: "Mortemoth, Kills moths (trade mark), Stainless, Guaranteed, Mothproofing." The words "kills moths" obviously are a part of the trade-mark, and the word

"guaranteed," appearing below, has reference to "mothproofing," which, under the circumstances, is something different from moth-killing where the insects are already in the furniture. Another label on the bottle contains this:

"Upholstered furniture. The contents of this bottle will protect one suite of three pieces. The crystals will harden slightly. This does not affect their efficiency whatsoever."

Here again is the word "protect," as distinguished from language that would convey the idea that the article would kill moths and moth larvæ already in the furniture. It is true that appellee's letter of December 11, 1928, ended with this sentence: "In closing, we desire you to be assured that this product is guaranteed to be exactly as represented to you." Nevertheless, the question remains: First, as to what the guaranty was; and second, as to who made the guaranty. Was the guaranty that the Mortemoth crystals would protect, as distinguished from kill? Did appellee, or the salesman, make the representation to which reference was made? Everything is in doubt.

Clearly, there was a basis for appellant's dissatisfaction. Under that state of the record, the district court, as a matter of law, could not rightfully say that the appellant acted dishonestly and in bad faith. Therefore, at least a jury question arose as to whether appellant was acting honestly and in good faith when it declared the guaranty unsatisfactory.

II. But appellee insists that, although the appellant had some option in reference to the guaranty, nevertheless it waived its right to receive the guaranty before title passed to the goods  and payment became due. Here reference is made by appellee to appellant's letter of December 5, 1928, wherein it is stated: "Your [appellee's] invoice, though due, will not be paid until we receive a satisfactory letter of guaranty." Adding that statement to the fact that the goods were shipped, and actually received by appellant and stored in its place of business, appellee concludes that the title to the product passed, and the purchase price became due. So, appellee insists, the district court had a right to direct a verdict in its favor.

Responding to appellee's contention, the appellant explains that the goods did come to Fort Dodge, and were delivered to

its place of business. This was done, however, appellant says, before it knew the contents of the box. Furthermore, appellant suggests that it did not open the box or in any way use any of the contents. Considerable delay in reshipping the product to the appellee arose, appellant explains, in the attempt to obtain the guaranty, as disclosed by the foregoing correspondence. Section 9977 of the 1927 Code contains the following language:

"The buyer is deemed to have accepted the goods when he intimates to the seller that he has accepted them, or when the goods have been delivered to him, and he does any act in relation to them which is inconsistent with the ownership of the seller, or when, after the lapse of a reasonable time, he retains the goods without intimating to the seller that he has rejected them."

By way of analogy, we said, in *Owens Co. v. Leland Farmers Elev. Co.*, 192 Iowa 771, on pages 779 and 780:

"We cannot, as a matter of law, say that defendant [the purchaser] accepted the machine, or that there was an unreasonable delay in notifying the plaintiff at its office in Minneapolis that the machine was not satisfactory, when all of its defects and claimed unfitness were already well known to appellant, which was trying to adjust it to comply with the admitted warranties."

"As a general rule, title to personal property does not pass so long as anything remains to be done by the parties." *Wesco Sup. Co. v. Incorporated Town of Allerton*, 156 Iowa 695, on page 698.

Again, we said in *Bishop v. Starrett*, 201 Iowa 493, on page 495:

"The question whether title passed on delivery, with a mere right to rescind if they proved unsatisfactory, or did not pass until they were found satisfactory upon a trial, depended upon the intent of the parties, to be determined from their words and conduct, as shown by the testimony."

With the law thus established, it was erroneous for the district court to say, as a matter of law, that the appellant intended to accept the goods without a warranty. That question should have been submitted to the jury, under proper instructions, in

order that such body could exercise its authority to determine the facts.

Then, because of the errors disclosed, the judgment of the district court should be, and hereby is, reversed.—*Reversed.*

MORLING, C. J., and EVANS, FAVILLE, and GRIMM, JJ., concur.