Hillsborough
No. 80-178

THE STATE OF NEW HAMPSHIRE

v.

ARTHUR J. HENEAULT

June 12, 1981

*Gregory H. Smith,* attorney general (*Thomas P. Colantuono,* assistant attorney general, on the brief and orally), for the State.

*Dalton, Dalton & Bryden,* of Andover, Massachusetts (*Charles F. Dalton, Jr.,* on the brief and orally), for the defendant.

DOUGLAS, J.   In this case we must decide whether the defendant's modified "circle of gold" chain letter scheme constitutes a sale of securities for the purposes of RSA ch. 421. We hold that it does not.

Sometime in the spring of 1979, the defendant became involved with "circle of gold" chain letters. To buy a letter, each purchaser paid fifty dollars to a seller and fifty dollars to the person whose name was first on a list in the letter. The purchaser then crossed the first name off the list, added his name to the bottom, and made a copy of the letter. He then would try to sell the two letters to others for fifty dollars apiece. If the chain continued unbroken, then the purchaser would receive one hundred thousand dollars.

The defendant purchased several letters from a bakery in Pelham. By following the procedure outlined above, he eventually received approximately thirty thousand dollars. Shortly after the defendant bought his letters, however, the Pelham area became saturated with them and it became difficult to sell the letters. In April 1979, the defendant began to help people find other purchasers. Finally, he modified the chain letter format so that he controlled the letters and the lists, and participants in the chain no longer had to find new buyers themselves.

People flocked to the defendant to buy letters. Soon the defendant became so enmeshed in the "circle of gold" that he needed several guards, six typists, and six sellers to assist him. For one hundred dollars, each person received a piece of paper that acted as a receipt. At first the receipt contained the original "circle of gold" instructions, but the defendant and his helpers orally instructed purchasers that they did not need to recruit new buyers but only had to call within a few days to find out how much money they would get. Eventually, the defendant made up new receipts that did not contain the chain letter instructions. At the top of each piece of paper was printed:

"GOLD
'FOR THOSE WHO NEED'
—PEOPLE HELPING PEOPLE—"

Following the heading was a list of names, then the text:

"This will be a welcome change to help you in your daily

life. You will not get rich but this will help you towards the things you would like to have. You will not lose any money. Let your dreams come true. May you enjoy to the fullest your prosperity and good fortune.

'GOOD LUCK' "

Handwritten across each receipt were the defendant's phone number, the date, and "Paid."

On April 30, 1979, the State obtained an order of the Superior Court enjoining the defendant's operation. In July 1979, the Hillsborough County grand jury indicted the defendant for seven instances of violating RSA 421:7 and :40 (Supp. 1979) by selling securities without registering as a dealer. After a two-day trial, a jury found the defendant guilty on all seven indictments. The Superior Court (*Goode*, J.) fined the defendant $32,450.00, and the defendant appealed.

Although the defendant raises several arguments on appeal, we need only consider the first: that the trial court erred in refusing to grant the defendant's motion for a directed verdict of acquittal at the close of the State's case because the State failed to establish that the scheme constituted the sale of securities within the meaning of RSA ch. 421. The defendant was indicted for violations of RSA 421:7 and :40 (Supp. 1979). RSA 421:7 prohibits the sale, offer for sale, or invitation of offers or inquiries about securities by all but those dealers registered according to the provisions of RSA ch. 421. RSA 421:40 (Supp. 1979) makes the violation of any provision of RSA ch. 421 a class B felony. For the purpose of those sections, RSA 421:2 (Supp. 1979) defines "securities" as

"[A]ll classes of stocks and shares, bonds, debentures, evidences of indebtedness and certificates of participation, certificates of warehousement, rights and interests in land from which petroleum or minerals are, or are intended to be, produced, ship shares and *investment contracts in the form of a bill of sale*, or any similar device, and contracts of service or advice relating to investments, or membership in organizations or associations purporting to render such service or advice. . . ."

(Emphasis added.)

Relying on *S.E.C. v. Howey Co.*, 328 U.S. 293 (1946), the State sought to prove that the defendant's circle of gold scheme was an "investment contract." Because the State relied solely on the "investment contract" language of the statute, we do not consider whether the defendant's scheme falls within the general definition

of "security". In *Howey*, the Supreme Court defined "investment contract" for purposes of *federal* securities law as "a contract, transaction or scheme whereby a person invests his money in a common enterprise and is led to expect profits solely from the efforts of the promoter or a third party . . . ." *Id.* at 298–99. Arguably, the defendant's scheme falls within that definition. Even if we were to arrive at that determination, that would not end our inquiry, however, because, *unlike* the federal securities statute, 15 U.S.C. § 77b(1) (1976), *see S.E.C. v. Howey Co.*, 328 U.S. at 297 n.3, or the Uniform Securities Act § 401(e), New Hampshire's law limits the definition of securities to those investment contracts *"in the form of a bill of sale."* RSA 421:2 (Supp. 1979). (Emphasis added.)

A bill of sale is a written instrument conveying an interest in personal property. *Hull v. Ray*, 80 Cal. App. 284, 289, 251 P. 810, 812 (1926); *Mercado v. Travelers Ins. Co.*, 443 S.W.2d 819, 822 (Tenn. App. 1969); *Vicars v. Discount Company*, 205 Va. 934, 939, 140 S.E.2d 667, 671 (1965). The documents that the defendant gave to the participants in his scheme did not purport to convey any interest in property, but were merely receipts for one hundred dollars paid into the plan. A receipt is not a bill of sale. *See Putnam v. McDonald*, 72 Vt. 4, 6, 47 A. 159, 159 (1899).

■■ Accordingly, we find that, even if the defendant's scheme constitutes an investment contract under federal law, the contract is not in the form of a bill of sale and does not fall within our statutory definition of a security as an investment contract. RSA 421:2 (Supp. 1979). Because the State did not prove an essential element of the crime charged, *State v. Ebelt*, 121 N.H. 143, 146, 427 A.2d 29, 31 (1981), the trial court erred in refusing to grant the defendant's motion for a directed verdict of acquittal.

We express no opinion whether the scheme violates other statutory prohibitions.

*Reversed.*

All concurred.